```
1                    United States District Court
2                 for the Southern District of California
3                                    )
4    UNITED STATES OF AMERICA,        )
                                      )   No. 21mj1210-AGS
5        Plaintiff,                   )
                                      )   April 15, 2021
6           v.                        )
                                      )
7    TROY MATTHEW GARLAND,            )   San Diego, California
                                      )
8        Defendant.                   )
                                      )
9

10                    Transcript of Detention Hearing
               BEFORE THE HONORABLE MITCHELL D. DEMBIN
11                   United States Magistrate Judge

12   APPEARANCES:

13   For the Plaintiff:       UNITED STATES ATTORNEY'S OFFICE
                                   FRANCISCO NAGEL
14                                 880 Front Street, Room 6293
                                   San Diego, CA   92101
15
     For the Defendant:       FEDERAL DEFENDERS OF SAN DIEGO, INC.
16                                 MICHELLE BETANCOURT
                                   225 Broadway, Suite 900
17                                 San Diego, CA   92101

18

19

20   Transcriber:             Dana Peabody, RDR, CRR
                                   District Court Clerk's Office
21                                 333 West Broadway, Suite 420
                                   San Diego, California, 92101
22

23

24   (Transcript prepared from a recording)

25
```

```
 1                San Diego, California, April 15, 2021
 2                            *   *   *
 3          THE CLERK:  Calling Matter Number 2, 21MJ1210, USA
 4  versus Troy Matthew Garland.
 5          MS. BETANCOURT:  Good morning, Your Honor.
 6  Michelle Betancourt, Federal Defenders, on behalf of
 7  Mr. Garland, who is present before the Court.
 8      Your Honor, I will say unfortunately I've struggled to
 9  speak with Mr. Garland.  I'm prepared to go forward because
10  I've been in touch with his family and friends, but I did not
11  personally review the waiver of personal appearance, but I'm
12  sure that he's willing to because he's been waiting for his
13  detention hearing.
14          THE COURT:  Yeah, and I'm sure he had the conversation
15  before his last hearing with the duty defender.
16      So, Mr. Garland, good morning, Your Honor.  How are you?
17          THE DEFENDANT:  I mean, I've been better, but I mean
18  (inaudible).
19          THE COURT:  All right.  As you can tell, you're
20  appearing by video today.  I know that you have had the
21  opportunity in the past to speak with a lawyer about your right
22  to appear in person.  Do you agree to appear by video today,
23  sir?
24          THE DEFENDANT:  Yes, I do.
25          THE COURT:  All right.  Great.
```

```
 1        We're on this morning for detention hearing.  Are the
 2   parties ready to proceed?
 3             MS. BETANCOURT:  Yes, Your Honor.
 4             THE COURT:  All right.  Let me hear first from the
 5   government then.
 6             MR. NAGEL:  Thank you, Your Honor.
 7        The United States is moving to detain Mr. Garland based on
 8   both a significant risk of flight and danger to the community.
 9             THE COURT:  Not according to the docket.  According to
10   the docket, it just says "risk of flight," but I'm happy to
11   hear it unless, Ms. Betancourt, are you prepared --
12             MS. BETANCOURT:  Your Honor, that's fine.
13             THE COURT:  Okay.  Let's go forward.
14             MR. NAGEL:  Thank you, Your Honor.
15        The defendant here is a 39-year-old U.S. citizen charged in
16   an indictment -- or pardon -- in a complaint for both
17   distributing methamphetamine and a host of firearms-related
18   charges, felon in possession of firearms and ammunition,
19   possession of an unregistered firearm, and dealing in firearms
20   without a license.  And so the nature and charges here weigh in
21   favor of detention.
22        As I mentioned, due to the methamphetamine charges, this is
23   a presumption of detention case, and, moreover, the
24   firearms-related charges deal -- concern dealing in
25   unregistered and privately manufactured dangerous weapons
```

1  including AR-15 rifles and AR-15-style rifles, Glock handguns,
2  and other weapons, and to be more specific, Your Honor, I think
3  by my count, it amounts to approximately 29 guns.
4      Moreover, the weight of the evidence here weighs in favor
5  of detention too.  Although afforded the least weight, the
6  weight here is strong.  Here an ATF confidential informant
7  purchased both narcotics and an AR-15 weapon from the
8  defendant.  Later the defendant admitted that he had made the
9  weapon himself and had other weapons to sell and later sent a
10 series of photographs of those privately manufactured weapons
11 that were available for sale.
12     Later authorities identified many other weapons and parts
13 at his residence.
14     And, finally, after his arrest, he admitted to the conduct,
15 he admitted to making part of the manufactured weapons and to
16 selling these privately manufactured weapons and to possessing
17 with the intent to sell methamphetamine.
18     Moving to the history and characteristics of the defendant,
19 Your Honor, we note that the defendant did report some use of
20 ectasy, but although it's unclear that that is ongoing, and in
21 looking at his criminal history, much of it -- the United
22 States admits that most of it is dated.  I think there are some
23 charges for use of controlled substance, you know, in 2002.  We
24 do note that there is -- there was a failure to appear in 2003.
25 Even though the charge was later dismissed, he was charged with

1  a failure to appear and then 2003 was convicted of possession
2  for sale of designated controlled substance and then most
3  recently in 2021, in February, was at least initially charged
4  with assault with a deadly weapon with force.
5      So, Your Honor, based on the totality of the circumstances
6  here, most importantly, the nature of the charges here and the
7  weight of the evidence, this is a presumption case because of
8  the methamphetamine, and we're dealing with privately
9  manufactured dangerous weapons that the defendant admitted to
10 manufacturing and selling, and for those reasons, Your Honor,
11 the United States submits that there's no condition or
12 combination of conditions that can reasonably assure his
13 presence at future court proceedings.
14      Thank you.
15          THE COURT:  All right.  Thank you.
16      Ms. Betancourt.
17          MS. BETANCOURT:  Yes, Your Honor.
18      Just as to whether this is a presumption case or not,
19 Count 4 alleges 24 grams of a mixture and substance containing
20 methamphetamine, and my understanding, it doesn't indicate
21 whether it's pure or not, but if it turns out to be five grams
22 of pure, it would only be a five-year min man.  If it's not,
23 then it's not even a min man under the guidelines.
24          THE COURT:  Right, but in order for it to be a
25 presumption case, it has to carry a maximum term of more than

1 | ten years, and it does.
2 |     MS. BETANCOURT: In the -- I guess if it's more than
3 | five grams. Aside from that --
4 |     THE COURT: Well, it just has to have a maximum term
5 | of imprisonment of ten years or more. It's irrelevant as to
6 | whether it is -- whether it is a minimum mandatory case or not
7 | has some bearing in terms of what the potential sentence might
8 | be, but to generate the presumption, it just has to be a
9 | maximum penalty of more than ten years, and this would have a
10 | maximum penalty of more than ten years.
11 |     MS. BETANCOURT: Correct, Your Honor. Your Honor, I
12 | would note that --
13 |     THE COURT: That's all right. You don't have to look
14 | it up. I was right.
15 |     MS. BETANCOURT: Your Honor, as to the assessment of
16 | nonappearance, the Pretrial Services denied bond here because
17 | of lack of verifiable familial, community, and financial ties,
18 | substance abuse history, and criminal history.
19 |     I'd like to start by pointing out that I received about
20 | seven letters from family and friends yesterday all attesting
21 | to their very close-knit relationship and local relationship
22 | with Mr. Garland. His mother, I've spoken to her at length --
23 |     THE COURT: Let me make it easy for you, if you don't
24 | mind.
25 |     MS. BETANCOURT: Sure.

1        THE COURT:  I believe that is correct, that
2   Mr. Garland wouldn't run.  I think he does not pose a risk of
3   flight.  He's here.  His girlfriend is here.  I don't know that
4   he has anywhere to go or the means to finance a fugitive
5   lifestyle.  I am significantly concerned about the danger to
6   the community.
7        MS. BETANCOURT:  I think that the Court certainly can
8   fashion conditions that would ensure that the Court is
9   satisfied that he is not a danger to the community.  Again, I
10  return to all the letters that were sent in support of
11  Mr. Garland indicating how he is an individual who would stop
12  on the side of the road to pull over and help someone with a
13  flat tire, he's an individual who's not had issues in terms of
14  any violent history.
15     I do note, Your Honor, he works as a security guard, so my
16  guess is that this charge in February of 2021 is likely related
17  to something that happened --
18        THE COURT:  That wasn't a charge, it was just an
19  arrest.  I'm ignoring it.
20     To me, the issue again, just to help you along, if it
21  matters, I'm concerned with him being a felon in possession,
22  manufacturing and selling weapons, and selling methamphetamine.
23  It is a dangerous and bad combination.
24        MS. BETANCOURT:  Very true, Your Honor, but all of
25  those things have been seized.  All of those things are out of

his possession, and all of those things are allegations that the Court is to give him the presumption of innocence.

THE COURT: Right, but the judge has found -- I didn't sign this complaint, but at least a preliminary probable cause finding has been made.

MS. BETANCOURT: Probable cause certainly, but not proof beyond a reasonable doubt, and he still does, you know, carry the presumption of innocence in this case.

THE COURT: Sure. I agree.

MS. BETANCOURT: So Mr. Garland will not be returning to that home. Mr. Garland would be supervised by our excellent Pretrial Services office who would be able to monitor his whereabouts. Pretrial Services always ensured that there are no guns on the premises. There is no one that has any firearms or anything around there. He will be drug tested, has no objection to that whatsoever.

Mr. Garland, as the Court heard, is facing a serious complaint here and serious charges. It is to his benefit to not continue any of this. I don't believe that there's any reason that the Court should consider that he's a danger to the community in that everything that the Court is concerned about has been seized and taken. It's not that he will have access to anything to further manufacture anything or to continue to sell anything.

The government did seize, as they said, by their count 29

1  firearms, so I don't believe that there's a continued danger to
2  the community nor has there ever been any allegations of him
3  doing anything of violence or violent in nature.  So I do think
4  that the Court can set conditions that would ensure and make
5  the Court feel confident and comfortable that he will not, you
6  know, further jeopardize his pretrial release.
7             THE COURT:  All right.  Thank you.
8       I am going to find that the government has sustained its
9  burden by clear and convincing evidence that Mr. Garland poses
10 a danger to the community.  I'm not finding that he is a risk
11 of flight because -- ordinarily, this would be -- despite the
12 allegations, this would be a bailable case, but as I said
13 before, my problem has to do with the nature of the offense.  I
14 appreciate he hasn't been convicted of this, but solely based
15 on the complaint for which there is probable cause, as well as
16 admissions, we have a situation where Mr. Garland appears to
17 have been selling drugs and guns while he is a convicted felon,
18 and that almost by its nature is dangerous and I believe
19 crosses the line to being clear and convincing evidence, and he
20 is and would continue to pose a danger to the community.
21      I appreciate that there's been seizures, but obviously
22 Mr. Garland, if he chose, has the ability to go back into that
23 business.  He may choose not to, but I don't know that I can
24 take that risk.  And that's really what it's about.  It's a
25 less than perfect risk assessment.  I certainly agree that it

1  is less than perfect, but, you know, we have to make these
2  decisions based on what's in front of us.  I'm not suggesting
3  that Mr. Garland is a bad guy.  You know, basically --
4         MS. BETANCOURT:  I think you are.  With all due
5  respect, I think you are.
6       If I may then proffer --
7         THE COURT:  No, no, no, I'm not.  I appreciate that he
8  has letters from the community, people that care about him,
9  people that he's been kind to, but we have a situation where
10 despite his kindness and gentle nature in the community, he
11 manufactures and sells guns and drugs.  I can't -- I just
12 can't -- I cannot -- Mr. Garland, it's probably best that you
13 not speak.  Anything you say can be used against you, and, you
14 know, you will have -- you will have an opportunity to have a
15 much more detailed conversation with your lawyer, and it may be
16 that based on that conversation, she may be able to convince me
17 that I've made a mistake.
18        MS. BETANCOURT:  Your Honor, so for the record, may I
19 just go ahead and outline the factors because this will be
20 appealed.  I don't want the record to show that I didn't
21 proffer any factors that the Court could consider.
22        THE COURT:  Sure.
23        MS. BETANCOURT:  Okay.  So Mr. Garland has been
24 employed at the same establishment for the past five years.  He
25 does have a steady income that he can support himself on.  His

1  girlfriend, Amanla Blaly (phonetic), is willing to be a surety
2  despite knowing the charges and consequences here.  She's
3  willing to post a bond on his behalf.
4       He is a father for two children who he maintains close
5  contact with and supports them both financially and
6  emotionally.  He has a 16-year-old daughter and an 11-year-old
7  son.
8       As I mentioned -- as I started to mention, his mother, who
9  is his stepmother actually but considers him her son for all
10 intents and purposes, is also willing to be a surety or this
11 case.
12      I think the Pretrial Services report points out that he has
13 maintained a steady employment, steady -- a stable housing
14 situation, has no physical issues, did a few months ago use
15 ecstasy, but no other issues, that there are no mental health
16 issues or anything that would cause him to reoffend or do
17 anything that the Court is concerned about.
18      With that, Your Honor, I would just submit and say that I
19 do object to the Court finding that he's a danger to the
20 community.
21          THE COURT:  And I appreciate that, and I think the
22 factors you've laid out are based in the Pretrial Services
23 report and other information.  That's why I decided that he
24 would not pose a risk of flight because of his connections to
25 the community and his job.

1    With that said, and I appreciate you disagree with me, I
2 believe that the allegations support a finding that he remains
3 a danger to the community by clear and convincing evidence.
4    So some other judge will decide whether I was right or
5 wrong, and we'll go from there.
6    You have a preliminary hearing date of April 22.  Do you
7 want to keep it or move it to the arraignment date?
8         MS. BETANCOURT:  I'd like to keep it, Your Honor.
9         THE COURT:  All right.  Mr. Garland, your next court
10 date is April 22 at 1:45 before Judge Skomal.
11    And with that, good luck, and if you can let the guard know
12 we're done for now.  You'll have a detailed conversation with
13 your lawyer and be able to figure out how you want to proceed.
14         MS. BETANCOURT:  Mr. Garland, I'm coming to MCC this
15 afternoon.  Thank you.
16         THE COURT:  All right.  Thank you, sir.
17                        ---000---
18                    C-E-R-T-I-F-I-C-A-T-I-O-N
19
20    I hereby certify that the foregoing is a correct transcript
21 from the electronic sound recording of the proceedings in the
22 above-entitled matter.
23    Dated April 16, 2021, at San Diego, California.
24
25                      /Dana Peabody/
                        Dana Peabody, Transcriber